UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY WESSINGER,                            Case No. 15-13848

          Plaintiff,                        Matthew F. Leitman
v.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,            Stephanie Dawkins Davis
                                            United States Magistrate Judge

          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 14)**

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On November 1, 2015, plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing social security disability benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Matthew F. Leitman referred this matter to Magistrate Judge Michael Hluchaniuk for the purpose of reviewing the Commissioner's decision denying plaintiff's claims. (Dkt. 4). On January 5, 2016, this matter was reassigned to the undersigned. (*See* Text-Only Notice of Reassignment dated 1/5/16). The matter is before the Court on cross-motions for summary judgment. (Dkt. 13, 14). The cross-motions are now ready for report and recommendation.

B.   <u>Administrative Proceedings</u>

On August 20, 2012 plaintiff filed claims for period of disability and disability insurance benefits, alleging disability beginning November 14, 2012. (Dkt. 11-2, Pg ID 65).  The Commissioner initially denied plaintiff's disability application on February 15, 2013.  *Id*.  Thereafter, plaintiff requested an administrative hearing, and on March 13, 2014, she appeared with counsel before Administrative Law Judge ("ALJ") Anthony Smereka, who considered his case *de novo*.  (Dkt. 11-2, Pg ID 80-110).  In a May 7, 2014 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act.  *Id*. at Pg ID 62-75.  The ALJ's decision became the final decision of the Commissioner on September 2, 2015, when the Social Security Administration's Appeals Council denied plaintiff's request for review.  *Id*. at Pg ID 34-39.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED** and that this matter be **REMANDED** for further proceedings under Sentence Four.

## II.   FACTUAL BACKGROUND

A.   <u>ALJ's Findings</u>

On the alleged onset date of disability, plaintiff was 50 years old, which

2

falls into the category of "closing approached advanced age." (Dkt. 11-2, Pg ID 73). Plaintiff, a resident of Ypsilanti, Michigan, has past relevant work as an art teacher and a sales representative, both of which are skilled in complexity and light in exertion. *Id*. Plaintiff suffers from a heart condition, anxiety and obesity. (Dkt. 11-2, Pg ID 67). Plaintiff stopped working on June 1, 2012 because of her health conditions, and because her contract ended and she was not offered a renewal. (Dkt. 11-6, Pg ID 211).

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff did not engage in any substantial gainful activity since the alleged onset date. (Dkt. 11-2, Pg ID 67). At step two, the ALJ found that plaintiff had the following severe impairments: status post myocardial infarction with bypass and defibrillator, anxiety, and obesity. *Id*. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations. *Id*. at Pg ID 68. The ALJ determined that plaintiff has the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she must avoid hazards including work at unprotected heights or around moving machinery; no climbing any ladders, ropes or scaffolds; no more than occasional climbing ramps or stairs; no

3

> more than frequently stooping, kneeling, crouching and
> crawling; no driving in course of employment; no work
> with the general public due to stress; and no fast
> production pace work where the pace is set by others.

*Id.* at Pg ID 70.  At step four, the ALJ determined that plaintiff could not perform

any past relevant work.  *Id*. at Pg ID 73.  At step five, the ALJ found that, given

plaintiff's age, education, work experience and RFC, there are sufficient jobs that

exist in the national economy that plaintiff can perform.  *Id*. at Pg ID 73-74.  Thus,

the ALJ concluded that plaintiff has not been under a disability from the alleged

onset date through the date of the ALJ's decision.  *Id*. at Pg ID 74.

      B.    <u>Plaintiff's Claims of Error</u>

      Plaintiff contends that the ALJ improperly rejected the treating physician

medical opinion of Dr. Sahu, in that the ALJ never actually discusses the medical

opinion nor weighs the medical opinion of the treating physician.  Specifically,

she avers that the ALJ failed to examine that medical evidence and the treating

physician medical opinion which concludes that plaintiff would be not be able to

stand for more than 60 minutes; sit for 4 hours; lift 20 pounds occasionally and 10

pounds frequently. (Dkt. 11-9, Pg ID 574; Dkt. 11-10, Pg ID 652-656).  According

to plaintiff, the ALJ seemed to take issue with the changing of the New York

Heart Association classification from 1 to 2.  *Id*.  However, plaintiff posits, the

ALJ could have seen the change as a worsening of plaintiff's condition since in

March of 2010 plaintiff's ejection fraction was 44%; but when Dr. Sahul changed it to a 2 the Plaintiff's ejection fraction had worsened to 35-40%. *Id*. Further, the ALJ fails to explain how the entire medical opinion is void because he did not understand one part of the medical opinion. According to plaintiff, if the ALJ had questions then he was obligated to re-contact the treating physician not ignore the entire medical opinion because the ALJ could not reconcile the perceived inconsistency.

Plaintiff also contends that the ALJ improperly relied on the opinions of state agency medical consultants, who were neither a treating nor examining physicians, but whose opinions were given "significant weight." (Dkt. 11-2, Pg ID 73). Plaintiff points out that the non-examining physician only reviewed a very small portion of the medical records that were available at the time he reviewed the file. According to plaintiff, the ALJ "blindly adopted" the non-examining medical opinions to fit his RFC despite the clear medical evidence and dismisses all treating and examining physicians based on vague and irrelevant reasoning.

Plaintiff also contends that the ALJ never evaluates whether, based on claimant's combined physical and mental limitations, she is capable of a competitive work schedule i.e., 8 hour day, 40 hour work week, as required by SSR 96-8p. Plaintiff maintains that the ALJ does not factor into his RFC determination, his own previous conclusion that plaintiff has the severe

impairments of status post myocardial infarction with bypass and defibrillator;
anxiety; and obesity.  According to plaintiff, there is not a scintilla of evidence to
support the ALJ's RFC assessment that she is capable of light work on a sustained
basis.  (Dkt. 11-2, Pg ID 67-70).  Plaintiff asserts that there was no evaluation by
the ALJ as to whether plaintiff needed to lay down during unscheduled work
breaks, would need to elevate her feet, or faced limitations based on concentration
problems related to plaintiff's severe fatigue, panic attacks, and pain issues.
Indeed, according to plaintiff, the ALJ "predetermined" the light exertional level
and the substantial evidence clearly demonstrates that plaintiff would be incapable
of light work on a sustained basis.

        Plaintiff also argues that, at step 2, the ALJ failed to evaluate plaintiff's
severe impairments of hyperlipidemia and hypertension.  (Dkt. 11-2, Pg ID 67).
Plaintiff concedes that this would be harmless error if the ALJ addressed the
severe impairments at the remaining steps.  However, the ALJ failed to weigh the
severe impairments at the remaining steps.

        Next, according to plaintiff, the ALJ never evaluates her subjective
complaints in accordance with the disability regulations pertaining to evaluation of
symptoms under SSR 96-7p.  Instead of evaluating the criteria in 96-7p the ALJ
states "the claimant's financial interest in the outcome" of the case was the
determining factor in his determination.  (Dkt. 11-2, Pg ID 71).  According to

plaintiff, the ALJ's "bizarre statement" in the decision is an abuse of discretion. Plaintiff knows of no Social Security regulation which the ALJ relies on for his assertion that he must weigh the claimant's financial interest in the outcome of the case. If the ALJ standard is adopted then no claimant could ever be found credible. According to the "narrative discussion requirements" in Social Security Ruling 96-8p, the ALJ "must" discuss these issues and is not free to simply ignore the issue.

C.    Commissioner's Motion for Summary Judgment

Contrary to plaintiff's assertions that the ALJ failed to "argue the medical evidence or the objective medical record," Pl. Brief at pp. 11, the Commissioner contends that the ALJ discussed the scant medical record from the time period at issue, including the performance of a stress test demonstrating ischemic cardiomyopathy, Dr. Sahul's repeated statement that plaintiff had done "very well without any further symptoms" since February 2012, and the generally benign results of Dr. Shetgari's consultative examination in January 2013. (Dkt. 11-2, Pg ID 72). According to the Commissioner, the ALJ therefore demonstrated that substantial record evidence was inconsistent with Dr. Sahul's opinion. *See Sullenger v. Comm'r Soc. Sec.*, 255 Fed. Appx. 988, 995 (6th Cir. 2007) (ALJ properly discounted a treating physician's opinion where it was contradicted by significant clinical findings). Plaintiff challenges the ALJ's consideration of Dr.

7

Sahul's medical source statements of March 10 and March 14, 2014, which the Commissioner says provided conflicting information as to plaintiff's ejection fraction and proper NYHA classification, in evaluating his March 11, 2013 opinion. On March 11, 2013, Dr. Sahul indicated very severe physical functional limitations that included sitting no more than 4 hours at a time, standing only 60 minutes, and working for no more than a combined total of 4 hours per day. (Dkt. 11-9, Pg ID 574). Yet, just a year later, Dr. Sahul completed one questionnaire indicating that plaintiff fell into NYHA Class I, indicating "no limitation of activities" and "no symptoms from ordinary activities" (Dkt. 11-10, Pg ID 654), and a second one just days later designating plaintiff as NYHA Class II, suggesting "slight, mild limitation of activity" and that she was "comfortable with rest or with mild exertion." (Dkt. 11-10, Pg ID 656) Of note, Dr. Sahul did not suggest that plaintiff fell into NYHA class III, with "marked limitation of activity," or Class IV as a "patient[ ] who should be at complete rest, confined to a bed or chair." (Dkt. 11-10, Pg ID 654, 656).

According to the Commissioner, Dr. Sahul's second cardiomyopathy questionnaire, indicating some degree of mild limitation, is facially at odds with his opinion of just one year before, and nothing in the contemporaneous treatment notes indicates any change during the intervening period. Rather, he consistently indicated from August 1, 2012 through February 10, 2014 that plaintiff had done

very well, without further cardiac symptoms, since an episode of chest tightness in February 2012. (Dkt. 11-9, Pg ID 497, 499, 568; Dkt. 11-10, Pg ID 650). The Commissioner maintains that his March 11, 2013 opinion of restrictive functional limitations and an inability to work full-time thus appears responsive to the desire plaintiff expressed, on March 8, 2013, to re-file for disability benefits: "I would support her disability application. We will help her with the paperwork." (Dkt. 11-9, Pg ID 569).

Furthermore, according to the Commissioner, the ALJ could reasonably see the unexplained change in Dr. Sahul's description of plaintiff's ejection fraction and NYHA class categorization, in two opinions spanning four days, as undermining the overall reliability of his statements. While plaintiff suggests that the change could reflect "a worsening of the Plaintiff's condition as of March of 2010 the Plaintiff's ejection fraction was 44; when Dr. Sahul changed it to a 2 the Plaintiff's ejection fraction had worsened to 35-40%," Pl. Brief at p. 12, the Commissioner says that nothing in the record supports such a conclusion. Rather, plaintiff's last treatment of record with Dr. Sahul was on February 10, 2014 (Dkt. 11-10, Pg ID 650-652), and there is no objective clinical data indicating a change in plaintiff's ejection fraction between March 10 and March 14, 2014. Plaintiff argues no more than that the ALJ could have viewed the evidence more favorably than he did. However, nothing in the Act, in the Commissioner's regulations, or in

9

governing case law requires an ALJ to view the evidence in the light most favorable to a claimant.

The Commissioner urges the Court to reject plaintiff's suggestion that the ALJ should have considered recontacting Dr. Sahul for clarification of his opinion. The Commissioner points out that an ALJ need only recontact a medical source "if the evidence received from that source is inadequate for a disability determination." *DeBoard v. Comm'r Soc. Sec.*, 211 Fed. Appx. 411, 416 (6th Cir. Dec. 15, 2006) (citing 20 C.F.R. § 404.1512). However, "[a]bsent a gap in the record, the ALJ has no duty to recontact the physician." *Starkey v. Comm'r Soc. Sec.*, 2008 WL 828861, at *4 (W.D. Mich. Mar. 26, 2008). The Commissioner asserts that there is no indication that the ALJ did not understand Dr. Sahul's March 2014 opinions; rather, even the more significant of those two opinions indicated only "mild limitation" and the capacity for "mild exertion," entirely consistent with the ALJ's assessment of an RFC for a limited range of light work, and completely inconsistent with Dr. Sahul's March 11, 2013 opinion. According to the Commissioner, plaintiff fails to demonstrate that the evidence in her case was insufficient to allow the ALJ to reach a decision on her disability claims.

Next, the Commissioner challenges plaintiff's contention that the ALJ improperly relied on Dr. Hahn's opinion to assess her physical RFC because Dr. Hahn "was neither a treating physician nor an examining physician," Pl. Brief at p.

10

12, and "only reviewed a very small portion of the medical records that were available at the time he reviewed the file." Pl. Brief at p. 13. According to the Commissioner, the mere fact that the ALJ afforded greater weight to the opinion of the State agency medical consultant than to that of her treating cardiologist does not, without more, warrant remand. The Commissioner points out that this Court has not hesitated to affirm the assignment of greater weight to the opinions of State agency medical reviewers than to those of treating and/or examining sources under similar circumstances. *See e.g.*, *Crussen v. Comm'r of Soc. Sec.*, 2013 WL 5313203, at *11-12 (E.D. Mich. Sept. 20, 2013); *Leach v. Comm'r of Soc. Sec.*, 2013 WL 3946068, at *14 (E.D. Mich. July 31, 2013); *McGrath v. Comm'r of Soc. Sec.*, 2013 WL 4507948, at *13-*14 (E.D. Mich. Aug. 23, 2013). Furthermore, while it is true that Dr. Hahn could not consider medical records that were obtained after his review, the Commissioner asserts that plaintiff identifies nothing in them that would reasonably have been expected to change his opinion, which is her burden. *See Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). The Commissioner points out that the medical record from the time period at issue is relatively scant and reflects Dr. Sahul's ongoing notations that plaintiff did "very well" without cardiac symptoms after February 2012. Meanwhile, Dr. Weide's treatment notes subsequent to Dr. Hahn's

11

February 2013 review fail to reveal any significant active problems or symptomatic worsening. (Dkt. 11-9, Pg ID 608-610, 613-615, 616-619). In sum, plaintiff's condition appears to have been stable throughout the time period before the ALJ for adjudication, such that any medical records Dr. Hahn did not review were duplicative of those he did. (Dkt. 11-3, Pg ID 117).

The Commissioner next argues that plaintiff fails to demonstrate that the ALJ omitted any significant mental or physical limitations from his residual functional capacity finding. Notably, the ALJ clearly based his physical and mental RFC findings on Dr. Hahn's opinion and on Dr. Rosenbaum's consultative psychological evaluation report. (Dkt. 11-2, Pg ID 73). Dr. Hahn expressly considered the full panoply of plaintiff's alleged physical impairments, including not only ischemic heart disease and cardiomyopathy, but also hyperlipidemia, essential hypertension, and obesity, yet found her capable of a limited range of light exertional work. (Dkt. 11-3, Pg ID 117-118, 120-122). Dr. Rosenbaum, meanwhile, assessed plaintiff with a GAF score of 60, indicative of only moderate symptoms. (Dkt. 11-9, Pg ID 566). According to the Commissioner, in the absence of any objective medical evidence suggesting any greater functional limitations, the ALJ reasonably assessed plaintiff with an RFC for light work, and additional non-exertional limitations on exposure to environmental hazards and postural activities, no driving in the course of her employment, no work with the

general public due to stress, and no fast production pace work where the pace is set by others.  (Dkt. 11-2, Pg ID 70 at Finding 5).

Plaintiff further complains that the ALJ did not consider whether she would need to lay down for unscheduled work breaks or elevate her feet, or whether she would suffer from concentration deficiencies due to fatigue, panic attacks, or pain. However, contrary to plaintiff's suggestion that "[a]ll of the above limitations are well documented in the medical records," Pl. Brief at p. 16, none of her medical providers contemporaneously documented such needs or deficiencies in their treatment records, and neither Dr. Hahn nor Dr. Rosenbaum suggested any corresponding limitations.  Indeed, even Dr. Sahul denied that plaintiff experienced pain in connection with her cardiac impairments. (Dkt. 11-9, Pg ID 574).

The Commissioner also disputes plaintiff's argument that the ALJ improperly failed to evaluate whether her impairments of hyperlipidemia and hypertension were severe at Step 2.  According to the Commissioner, plaintiff identifies nothing in the record suggesting that either of those impairments imposed any functional limitations at all.  An impairment cannot be considered severe at Step 2 unless it significantly limits a claimant's physical or mental ability to do basic work activities.  Here, the record as to plaintiff's hypertension documents routine medical maintenance, with no worsening or symptomatic

13

episodes during the relevant time period.  (Dkt. 11-9, Pg ID 604-605, 608-609, 616-619).  The record says nothing whatsoever about her hyperlipidemia at all. No record(s) suggests that either condition resulted in any work-related limitations whatsoever.  According to the Commissioner, the ALJ cannot be faulted for not having expressly evaluated these impairments at Step 2, particularly in light of plaintiff's failure to assert them as disabling impairments in connection with her DIB application.  (Dkt. 11-6, Pg ID 211).  Thus, plaintiff cannot carry her burden at Step 2 of showing that these impairments are severe on this record.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

Plaintiff further charges the ALJ with failing to comply with SSR 96-8p, concerning RFC assessment, which she contends required the ALJ to expressly discuss her ability to perform sustained work activities on a regular and continuing basis.  The Commissioner points out that, in response to the same argument, this court recently observed that "[m]ost courts do not require any discussion" of this factor, and that those courts "find that an RFC implicitly includes the determination on whether the claimant can sustain a regular work schedule." *Houston v. Comm'r of Soc. Sec.*, 2015 WL 5752720, at *18 (E.D. Mich. Aug. 25, 2015).  Furthermore, "other courts give the ALJs significant leeway in satisfying this ruling." *Id*. (quoting *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006); *Pekrul v. Barnhart*, 153 Fed. Appx. 329, 332 (5th Cir. 2005); *Dunbar v. Barnhart*,

14

2:15-cv-13848-MFL-SDD   Doc # 17   Filed 02/16/17   Pg 15 of 29   Pg ID 766

330 F.3d 670, 672 (5th Cir. 2003).

Finally, plaintiff argues that the ALJ failed to adequately evaluate the credibility of her subjective complaints of her symptoms and resulting limitations under SSR 96-7p, which governs the evaluation of a claimant's subjective statements. As explained in *Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003), "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." Here, the ALJ found that "the claimant's subjective complaints are found to be exaggerated and inconsistent with the other evidence, including the clinical and objective findings of record." (Dkt. 11-2, Pg ID 71). The ALJ specified Dr. Sahul's statements that plaintiff had done "very well without any further symptoms" since February 2012, and his description of her as clinically stable. (Dkt. 11-2, Pg ID 72). The ALJ also considered plaintiff's subjective complaints to be inconsistent with the findings Dr. Shetgeri reported on consultative examination. (Dkt. 11-2, Pg ID 72). Under SSR 96-7p, "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." 1996 WL 374184, at *5. Adjudicators, including ALJ's, are specifically instructed to evaluate "[t]he degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by other sources." *Id*. And,

15

while plaintiff complains that the ALJ "[a]dditionally" considered her "financial interest in the outcome" of her disability claim as reflecting negatively on her credibility (Dkt. 11-2, Pg ID 71), Pl. Brief at p. 17, the Commissioner maintains that it is clear that the ALJ's primary concern was that her subjective complaints of work-preclusive limitations were out of proportion to the minimal, benign objective findings and the contemporaneous medical records.  Under the circumstances, the ALJ could reasonably conclude that her subjective complaints were "exaggerated" due to her "financial interest" in obtaining the DIB benefits which are the substance of this action.

Plaintiff asserts that "[t]here is not a scintilla of evidence to support [the ALJ's] RFC assessment." Pl. Brief at p. 16.  The Commissioner points out the plaintiff bears the burden to prove her RFC.  *See Her v. Comm'r Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); *see also Isaac v. Comm'r Soc. Sec.*, 2013 WL 4042617, at *10 (E.D. Mich. Aug. 9, 2013).  Here, the ALJ's RFC finding limited plaintiff to a limited range of light work; yet, plaintiff fails to identify any specific limitations, substantiated by the medical evidence, which the ALJ impermissibly failed to include in his RFC findings, such that she is entitled to remand.  *See Shinseki*, 129 S. Ct. at 1706.  Thus, the Commissioner maintains that substantial evidence supports the ALJ's RFC findings, and this decision should therefore affirm her decision finding plaintiff not disabled

16

III.   **DISCUSSION**

     A.   <u>Standard of Review</u>

     This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

     If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed

18

> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

    "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

     B.    <u>Analysis</u>

        1.    Treating physician

An opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "non-examining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "non-treating source"). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (internal citations omitted). An ALJ is required to evaluate every medical opinion of record, and set forth a valid basis for rejecting any. 20 C.F.R. § 404.1527; *see Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). Moreover, "in weighing medical evidence, 'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Allen v. Comm'r of Soc. Sec.*, No. 12-15097, 2013 WL 5676254, at *15 (E.D.

Mich. Sept. 13, 2013) (citing *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009)).  An ALJ may not substitute his [or her] own medical judgment for that of a treating or examining doctor where the opinion of that doctor is supported by the medical evidence.  *See Simpson*, 344 Fed. Appx. at 194; *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at * 13 (S.D. Ohio 2008) ("[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record.").  In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio 2011).  This is so even though the final responsibility for the RFC determination is an issue reserved to the Commissioner.  *Allen*, 2013 WL 5676254, at *15.

Plaintiff's primary argument is that the ALJ unreasonably discounted her treating physician's opinion in favor of the review physician opinion.  On March 11, 2013, Dr. Sahul indicated that plaintiff had severe physical functional limitations, including sitting no more than four hours at a time, standing only 60

21

minutes, and working for no more than a combined total of four hours per day.

(Dkt. 11-9, Pg ID 574).

With respect to Dr. Sahul's opinion regarding plaintiff's limitations, the

ALJ concluded:

> As for the opinion evidence, a Medical Source Statement signed by Dr. Sahul in March 2013 indicates that the claimant is limited to working only four hours a day with light lifting (Exhibit 7F). However, one year later Dr. Sahul completed another Medical Source Statement diagnosing the claimant with dilated congestive cardiomyopathy with decreased left ventricle ejection fraction of 44%, noting that the claimant's New York Heart Association classification is class I. Class I patients are described as having no limitations of activity (Exhibit 10F, pages 4-5). On March 14, 2014 (four days later), Dr. Sahul classified the claimant as Class II with an ejection fraction of 35-40% and mild limitations on activities (Exhibit 11F). There is no explanation for the change in classification.

(Dkt. 11-2, Pg ID 73-74).

The undersigned concludes that the ALJ failed to give the requisite "good

reasons" when he discounted the RFC assessment of plaintiff's treating physician,

Dr. Sahul. As the Sixth Circuit stated: "This requirement [to always give good

reasons] is not simply a formality; it is to safeguard the claimant's procedural

rights. It is intended to let claimants understand the disposition of their cases,

particularly in situations where a claimant knows that his physician has deemed

him disabled and therefore might be especially bewildered when told by an

administrative bureaucracy that [ ] he is not." *Cole v. Astrue*, 661 F.3d 931, 937
(6th Cir. 2011) (citation omitted).  Moreover, if the ALJ determined that plaintiff's
treating physician's opinion should not be given controlling weight despite the
medical evidence in support, "the ALJ must still determine how much weight is
appropriate by considering a number of factors, including the length of the
treatment relationship, supportability of the opinion, consistency of the opinion
with the record as a whole, and any specialization of the treating physician."
*Blakley v. Comm'r of Soc. Sec.*, 582 F.3d 399, 406 (6th Cir. 2009).  As explained
in SSR 96-2p, adjudicators must remember that a finding that a treating source
medical opinion is not well-supported by medically acceptable clinical and
laboratory diagnostic techniques or is inconsistent with the other substantial
evidence in the case record means only that the opinion is not entitled to
controlling weight not that the opinion should be rejected.  Treating source
medical opinions are still entitled to deference and must be weighed using all of
the factors provided in 20 C.F.R. 404.1527 and 416.927.  In many cases, a treating
source's medical opinion will be entitled to the greatest weight and should be
adopted, even if it does not meet the test for controlling weight.

Although the ALJ made an effort to review Dr. Sahul's treatment records,
the undersigned concludes that the ALJ did not offer the necessary illumination as
to why he discounted his opinion.  Here, the Commissioner spends a great deal of

effort searching the record for support of the ALJ's treatment of Dr. Sahul's opinions, but much of the argument is a post-hoc attempt to justify the failure to follow the correct treating source analysis, which the Court may not consider. *Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *6 (6th Cir. 1993) (The court "may not accept appellate counsel's post hoc rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 103 (1983)); *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991) ("Courts are not at liberty to speculate on the basis of an administrative agency's order.... The court is not free to accept 'appellate counsel's post hoc rationalization for agency action in lieu of reasons and findings enunciated by the Board.'"). The ALJ's only stated reason for rejecting Dr. Sahul's 2013 opinions are later medical source statements where he included an opinion regarding the classification for plaintiff's heart condition. (Dkt. 11-10, Pg ID 653-656). The significance of Dr. Sahul changing plaintiff's classification from I to II in March 2014 is not entirely clear, nor is it clear how the ALJ deduced that this was inconsistent with Dr. Sahul's 2013 opinion. This is especially true because Dr. Sahul's medical records reveal that he had consistently classified plaintiff as having "class 2 symptoms." (Dkt. 11-8, Pg ID 379, Office Note dated 8/20/12; Dkt. 11-9, Pg ID 499, Office Note dated 8/1/12; Dkt. 11-9, Pg

ID 502, Office Note dated 2/17/12; Dkt. 11-9, Pg ID 568-69, Office Note dated 3/8/13; Dkt. 11-10, Pg ID 650, Office Note dated 2/10/14). Furthermore, the change in ejection fraction on Dr. Sahul's March 14, 2014 MSS from the March 10, 2014 MSS is consistent with the ALJ's statement at the hearing that plaintiff's ejection fraction was 35-40% in August 2012.  (Dkt. 11-2, Pg ID 92-93; see also 8/20/12 Dr. Sahul Office Note, Dkt. 11-8, Pg ID 379).[1]  Even if Dr. Sahul's opinion was not entitled to controlling weight, it was entitled to deference in view of the longitudinal medical record.  20 C.F.R. § 404.1527(d)(2)(I).  Accordingly, proper evaluation of Dr. Sahul's opinion necessitates remand.

> 2.    Step 2

At step two of the sequential evaluation process, the ALJ must consider whether a claimant has a severe impairment and whether the impairment(s) meet the twelve month durational requirement in 20 C.F.R. § 404.1509. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a severe medically determinable physical or mental impairment ... that meets the durational requirement in § 404.1509 ..., or a combination of impairments that is

---

[1]  Plaintiff maintains in her testimony and elsewhere that her ejection fraction is 32%. There is some support in the record for this number.  As noted in Dr. Shetgeri's report, "a stress test revealed the ejection fraction was approximately 32%. In an objective stress test report, the ejection fraction is 40% as reported."  (Dkt. 11-9, Pg ID 559).  There is no explanation regarding the clinical significance of these two differing results, if any.

severe and meets the durational requirement, then [she] is not disabled.").  As

noted *supra,* the applicant bears the burden of establishing the existence within the

administrative record of objective medical evidence suggesting that the applicant

was "disabled" as defined by the Act.  In order to be classified as severe, an

impairment or combination of impairments must significantly limit the claimant's

physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c),

416.920(c).  Basic work activities, defined in the regulations as "the abilities and

aptitudes necessary to do most jobs," include: (1) physical functions such as

walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or

handling; (2) capacities for seeing, hearing, and speaking; (3) understanding,

carrying out, and remembering simple instructions; (4) use of judgment; (5)

responding appropriately to supervision, co-workers, and usual work situations;

and (6) dealing with changes in routine work settings.

The Commissioner properly points out that Sixth Circuit precedent readily

establishes that failure to find an impairment severe at step two of the sequential

analysis is not reversible error if the ALJ found another impairment severe and

therefore continued with the five-step evaluation.  *See e.g.*, *Fisk v. Astrue*, 253

Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457

(6th Cir. 2008).  If the ALJ continues with the remaining steps, any error at step

two is harmless, so long as the ALJ considered the effects of all medically

26

2:15-cv-13848-MFL-SDD   Doc # 17   Filed 02/16/17   Pg 27 of 29   Pg ID 778

determinable impairments, including those deemed nonsevere. *See e.g.*, *Cobb v. Colvin*, 2013 WL 1767938 (D. Kan. 2013) ("The Commissioner is correct that the failure to find that additional impairments are severe is not in itself cause for reversal. But this is true only so long as the ALJ considers the effects of all of the claimant's medically determinable impairments, both those he deems severe and those not severe.") (internal quotation marks omitted); *Jackson v. Astrue*, 734 F.Supp.2d 1343, 1361 (N.D. Ga. 2010) (Where ALJ identified one severe impairment at step two, the failure to identify additional severe impairments at step two was harmless error in child disability case where the ALJ considered all of the plaintiff's impairments at other steps as demonstrated by discussion of testimony and medical history.).

The mere fact that plaintiff has been diagnosed with hyperlipidemia and hypertension is insufficient, standing alone, to indicate that either reflects a severe impairment. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Rather, at step two, plaintiff must show that her hyperlipidemia and hypertension significantly limit her ability to do basic work activities. Yet here, plaintiff points to no medical opinions in the record or other evidence suggesting that these conditions limited her or imposed any work-related limitations more than as found by the ALJ. Therefore, any error that might exist was entirely harmless. *See e.g.*, *Leppien v. Comm'r of Soc. Sec.*, 2016 WL 3661851, at *6 (W.D. Mich. July 11,

2016).

Given the foregoing conclusion that a remand is necessary for a reevaluation of the treating physician opinion, the undersigned concludes that it is not necessary to address plaintiff's remaining claims of error. However, the ALJ will necessarily have to reassess plaintiff's credibility and Dr. Hahn's opinion in light of the new analysis of plaintiff's treating physician opinions.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings pursuant to Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 16, 2017                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 16, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov